## Abrams et al. v. Commonwealth.

(Decided April 27, 1934.)

ROSS & ROSS for appellants.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Perry—Reversing.

At the October term, 1931, of the Madison circuit court, an indictment was returned against John Dean, L. A. Abrams, and others, charging them with the offense of unlawfully conspiring for the purpose of doing a series of felonious acts.

L. A. Abrams executed bail bond October 29, 1931, with T. S. Abrams and Edgar Howard as his sureties, whereby they undertook that the said L. A. Abrams would appear in the Madison circuit court on the 7th day of its February term, 1932, to answer said charge, and that he at all times would render himself amenable to the orders and process of the court in the prosecution of said charge.

The facts, it appears, are without controversy that the defendant Abrams thereafter duly appeared for trial at the February term, 1932, when the case was continued on motion of the commonwealth to the May term; that it was again continued to the October term, when it was called, and on the commonwealth's motion continued to the next February term, 1933, at which it was set for trial on the 14th day of February, 1933, when the appellant Abrams, upon being called, failed to appear. Such fact being noted upon the record, his bail bond was ordered forfeited and summons directed to be issued against him and his sureties, T. S. Abrams and Edgar Howard, returnable on the 7th day of the next May term of court, to show cause why judgment should not be rendered against them for $1,000, the penalty specified in the bond.

Thereafter, on February 21, 1933, the appellant was arrested within the county and brought into open court, when he, upon the same day, executed new bond.

Before such arrest and reappearance in court on the 21st, however, the defendant Dean had on February 15, 1933, secured a continuance of the case against them to the May term, at the cost of Dean, when it was again, upon Dean's motion and supporting affidavit, continued to the October, 1933, term of the court, when it was, on the commonwealth's motion, continued again to the February, 1934, term.

At the first of the May term, 1933, to which summons had issued for appellant and sureties to respond to the court's order forfeiting their bond, they appeared

and filed response to the order, which was later on hearing and trial at the October term, 1933, of the court, adjudged insufficient, and the commonwealth's demurrer to same sustained, with leave given to amend. Amendment was filed on the following day, when demurrer was again filed to it as amended, and same again sustained by the court, when, the defendants, declining to plead further, their answers having been adjudged insufficient, were dismissed and payment in full of the forfeited bond thereupon adjudged.

From this judgment and order of the court this appeal is prosecuted.

The question therefore here presented for our review is purely one of law, as to whether or not the trial judge abused his discretion in assessing and adjudging that the appellant bondsmen pay the full amount of the bond's named penalty of $1,000, which it had ordered forfeited by reason of the defendant L. A. Abrams' failure to appear in court for trial on February 14, 1933, the day set for the prosecution of said charge; that is to say, did the court err in sustaining the commonwealth's demurrer to appellants' response, holding that the facts set out in their answer were insufficient to excuse defendant's failure to appear or to entitle appellants to even a partial remission of the $1,000 penalty specified in the forfeited bond?

This appeal is prosecuted by the defendant and his sureties from the adverse answer given by the judgment to this question.

By section 96 of the Criminal Code of Practice it is provided that:

"If, before the final adjournment of the court, the defendant appear and satisfactorily excuse the failure, the court may discharge the forfeiture,"

and by section 98 it is further provided that:

"If, before judgment is entered against the bail, the defendant be surrendered or arrested, the court may, at its discretion, remit the whole or part of the sum specified in the bail bond."

In construing section 98, it has been repeatedly held that it confers on the court a judicial discretion to render judgment in a proceeding on a bail bond for such part of the penalty as may under the facts appear just

and proper; and that this discretionary power is one to be exercised judicially upon a consideration of all the facts of the case. Commonwealth v. Thornton, 1 Metc. 380; Commonwealth v. Coleman, 2 Metc. 382; Commonwealth v. Cambron, 210 Ky. 418, 276 S. W. 113. In Fortney v. Commonwealth, 140 Ky. 545, 131 S. W. 383, we so held and to like effect said:

"The discretion which is conferred upon the court by the section is a judicial discretion, and not an arbitrary one; but its exercise will not be controlled, unless palpably abused. Com. v. Davidson, 1 Bush, 133; Yarbrough v. Com., 89 Ky. 151, 12 S. W. 143, 11 Ky. Law Rep. 351, 25 Am. St. Rep. 524. Yet the statute must be administered in such a manner as to effectuate its purposes. The purpose of requiring bail bonds is not to enrich the treasury, but to secure the administration of justice. The purpose of the statute in allowing a remission of the whole or a part of the sum specified in the bond, where the defendant is surrendered or arrested before judgment is entered against the bail, is to secure the defendant's being arrested and brought to justice. * * *

"The primary object of the law is to punish the criminal. The bond is allowed to be given for the convenience of a person not yet proved to be guilty, and to protect the state against the expense of keeping such persons in jail. When the criminal has been arrested promptly, as in this case, it would entirely defeat the purpose of the statute if no part of the penalty of the bail bond is remitted; for, if this may be done, no inducement will be held out to the bail to have the defendant arrested and brought to justice, and it was this that the statute was aimed to secure."

In the case quoted, the facts were that Fortney executed, as surety, bail bond in the sum of $300 for the appearance of one Messer, indicted for false swearing, which, upon Messer's failing to appear upon the calling of the case for trial, was adjudged forfeited. Thereupon Fortney set to work to have Messer arrested, in which he succeeded, and delivered him to the jailer before the next term of court. Under these facts it was held that the circuit court palpably abused its sound discretion in giving judgment against the bailee for the

full amount of the forfeited bond, when, under the circumstances shown by the response, a judgment for $50, with costs, was as much as should have been rendered against him.

Again, in the later case of Turner et al. v. Commonwealth, 171 Ky. 304, 188 S. W. 404, 405, was this question before this court, when, in an opinion written for it by Judge Clarke, it quoted with approval the language of its opinion given in the case of Commonwealth v. Thornton, 1 Metc. 380, construing section 98 of the Criminal Code of Practice, as follows:

"The right to remit, which is conferred, is only a power to decide how much, if any part, of the sum specified in the bail bond a judgment shall be rendered for. The defense which the Code authorizes may be, as established by the proof, sufficient to diminish the amount of the judgment, although insufficient to entitle the defendants to a discharge from all liability on the bond. In this respect the defense is somewhat anomalous in its character, but still it is such a defense as the Legislature could allow the obligors in the bond to make, and empower the court to hear and determine."

Continuing, the opinion states:

"This construction never has been departed from, but has been recognized and approved in many subsequent opinions of this court. Commonwealth v. Coleman, 2 Metc. 382, Commonwealth v. Runnion, 3 Metc. 2, and Commonwealth v. Hillis, 96 S. W. 873, 29 Ky. Law Rep. 1063. So that the trial court in the instant case was authorized and had the power to adjudge against these appellants such a sum, and only such a sum, as was reasonable upon the facts in this case as shown in the evidence. It is clearly established that there was no purpose on the part of the defendant to avoid trial, and that he was not in court to answer when his case was called for trial because of the fact that he was mistaken about the time court convened."

Likewise in the instant case does it appear that the facts and circumstances shown by the record and offered in appellants' response are here, as there, such as reasonably tend to evince no culpable purpose on the part of the defendant to avoid trial or not to hold himself amenable to the orders of the court or an effort to

evade trial, but rather do they tend to show a purpose to comply therewith by a continuing obedience thereto. Consistent with such purpose is the statement of his response, in its effort to explain that he failed to appear in court when his case was called for trial on February 14, 1933, not by intent but only by reason of his mistake or claimed confusion of mind and memory as to the day his appearance in court was ordered, and his erroneous belief that his case was set not for February 14th, but for the fourth Monday of that month for trial. In support of this inference that his default in timely appearance in court was due to such error is the admitted fact of the defendant's continued conduct after his execution of this bail bond in October, 1931, in thereafter being present in court upon all of the several days and dates to which his case was assigned for trial, throughout the six or seven subsequent court terms of 1932 and 1933, during which, due to repeated continuances of the case, it was pending, except upon the one date to which assigned, to wit, February 14, 1933, when he failed to appear which by his response he explained by averring that it was caused by his mistake as stated. Further, it appears that to the summons issued against him and his bondsmen to show cause why judgment should not be rendered against them on the ordered forfeiture, for the full penalty specified in the bond, due response was made, as directed by the summons, at the first of the following May term, 1933, undertaking to satisfactorily explain and excuse his failure to appear in court upon the day stated.

The question presented, therefore, is: Did the trial court abuse its discretion in here refusing to discharge the order of forfeiture or to remit some part of the penal sum specified in the bail bond, in the exercise of its discretionary right, given it so to do by the quoted Code sections, supra, its discretion in such case being one which, according to the rule, should be exercised soundly and judicially, upon a consideration of all the facts relied upon in the defense to excuse or at least partially exculpate defendant's failure to appear?

When it is considered that the primary purpose and basic principle of a bail bond is to insure the presence of the defendant in court, in order to avoid both an obstruction of justice and the expense incident to a delay in trial, we are constrained to conclude that the trial court here erred in exacting of appellants a for-

feiture of the full penalty of $1,000 specified in the bond, because of defendant's failure to appear, as it reasonably appears it was not prompted by such purpose nor attended with such hurtful or expensive result.

In the case of Commonwealth v. Hillis, 96 S. W. 873, 876, 29 Ky. Law Rep. 1063, on motion of the commonwealth for judgment on a forfeited bail bond, the defendant appeared and surrendered himself and filed answer, alleging that he had been threatened with assassination and that his flight from the state was caused thereby; that, when he fled, it was not for the purpose of avoiding trial but to save his life, which he had reasonable grounds to believe he was in imminent danger of losing; that it was his then intention to return at the next term for trial; and that he did volunarily return and surrender himself before any judgment was rendered against him or his sureties on the forfeiture. To this answer, the commonwealth filed a demurrer, which the court overruled, adjudging that the matters of defense relied on in the response were sufficient to justify the setting aside of the forfeiture and the remission of the amount of the bond. The commonwealth attorney, electing to stand upon the demurrer, appealed, insisting that the facts averred in the answer did not authorize the judgment it appealed from.

The court, in its opinion upholding the judgment, quotes with approval from Commonwealth v. Davidson, 1 Bush, 133, as follows:

"There appears to have been no such abuse of the discretionary power of the court in this case, nor any such essential error in its rulings, as to authorize a reversal of the judgment," and further saying:

"Long ago, Chief Justice Marshall, in the case of U. S. v. Feely, 1 Brock [U. S.] 255, Fed. Cas. No. 15,082, in discussing the power of the court to remit forfeitures, forcefully said:

"'It is not an unreasonable power. The object of a recognizance is not to enrich the treasury, but to combine the administration of criminal justice with the convenience of the person accused, but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his

recognizance, but repairs the default as much as it is in his power by appearing at the succeeding term, and submitting himself to the law, the real intention and object of the recognizance are effected, and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in the government to exact from an innocent man a penalty, intended only to secure a trial, because the trial was suspended, in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If found guilty, he must suffer the punishment intended by the law for his offense, and it would be unreasonable to superadd the penalty of any obligation entered into only to secure a trial.' "

Consonant both with the rule and reason therefor as announced in these quoted cases, it must be apparent from the record in the case at bar that the default of Abrams to appear in court upon the occasion in evidence was not due to any design to evade trial nor resulted in any delay of his trial, as he was returned into court and executed new bond during the same term, within a week after his case was set for trial, and when, it appears, it had then, upon the motion of his codefendant, been continued to the following May term of court, at which he again appeared for trial, in compliance with his bond.

Under the facts, we are of the opinion that the circuit court did not exercise a sound and legal discretion in giving judgment against the bail for the full amount of the $1,000 specified as penalty in the bond, and, under all the circumstances, that a judgment for $50, with costs, should have been rendered.

Therefore judgment is reversed and cause remanded for a judgment as above indicated.